**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

**MARCUS BUGGS,**

      **Petitioner,**

**v.**                             **Case No. 1:18-cv-00588**

**R. STEPHENS CLEMONTS,
Acting Warden, USP Coleman II,**

      **Respondent.**


**PROPOSED FINDINGS AND RECOMMENDATIONS**

      Pending before the Court are Petitioner's *pro se* Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, and Respondent's requests for dismissal. (ECF Nos. 4, 24, 30). This matter is assigned to the Honorable David A. Faber, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having thoroughly considered the record, the undersigned determines that Petitioner is clearly not entitled to relief; therefore, the undersigned **RECOMMENDS** that the § 2241 petition be **DENIED**, (ECF No. 4), that Respondent's requests for dismissal, (ECF Nos. 24, 30), be **GRANTED**, and this matter be **DISMISSED**, with prejudice, from the docket of the Court.

I.    <u>**Relevant History**</u>

    **A. Proceedings in district of conviction**

    Respondent supplied an Affidavit from Angela Kelly who is employed by the

Bureau of Prisons ("BOP") as a Correctional Programs Specialist at the Designation and Sentence Computation Center located in Grand Prairie, Texas. (ECF No. 30-1 at 1). Ms. Kelly asserts that on April 8, 2009, Petitioner, Marcus Buggs ("Buggs"), was arrested by state law enforcement authorities in Grand Rapids, Michigan for offenses including possession of marijuana, conspiracy, delivery and manufacture of cocaine, and felony possession of firearms. At the time he was arrested, Buggs was serving a term of parole imposed by the Michigan state courts. (*Id.*). Buggs pled guilty to possession of marijuana on April 23, 2009 in the Grand Rapids 61st District Court. (*Id.* at 2).[1]

On May 14, 2009, Buggs was indicted in the United States District Court for the Western District of Michigan ("District Court") on the same factual basis as led to his arrest by state authorities. *United States of America v. Buggs,* Case No. 1:09-CR-147-02 (W.D. Mich. May 14, 2009) ("*Buggs I*") at ECF No. 1. The indictment alleged charges including conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine ("Count 1"); possession with intent to distribute crack cocaine ("Count 4"); possession of a firearm in furtherance of drug trafficking crimes ("Count 6"); and felon in possession of a firearm ("Count 8"). *Id.* On May 18, 2009, the District Court issued an arrest warrant against Buggs and he was detained in federal custody pending disposition of his indictment. (ECF No. 30-1 at 2; 31-1 at 14). Buggs's state parole proceedings were placed on hold until the resolution of his federal criminal charges. (ECF No. 31-1 at 24).

On May 28, 2009, the state charges against Buggs for which he had been indicted

---

[1] On July 22, 2009, the Grand Rapids 61st District Court issued a bench warrant for Buggs's failure to appear for sentencing on this charge. Buggs did not appear because he was detained in federal custody at that time. (ECF Nos. 30-3 at 1; 31-1 at 97). Documents prepared by the Michigan Department of Corrections indicate that the warrant will remain active until Buggs is released from his federal sentence. (ECF No. 31-1 at 97).

in federal court were dismissed *nolle prosequi.* (ECF No. 30-3 at 2). On August 15, 2009, Buggs signed an agreement with the United States in which Buggs was to enter a guilty plea to Counts 1 and 6 in exchange for dismissal of Counts 4 and 8. *Buggs I,* at ECF No. 28. The United States further agreed not to seek a sentence enhancement under 21 U.S.C. §§ 841(b)(1)(A) and 851. *Id.* at 4. Buggs acknowledged his understanding that Count 1 carried a mandatory minimum sentence of ten years to life imprisonment and Count 6 had a mandatory minimum of five years to be served consecutively to the sentence given for Count 1. *Id.* at 2. Both parties confirmed that the District Court would make the final determination of the guidelines range pursuant to the United States Sentencing Guidelines ("Guidelines") and could impose a sentence at, above, or below the guidelines range. *Id.* at 6. Buggs waived the right to appeal his sentence, unless the sentence exceeded the statutory maximum or was based on an unconstitutional factor, and he waived the right to collaterally challenge the sentence, unless his waiver was found to be invalid. *Id.* at 7.

Buggs's sentencing hearing was held on December 10, 2009. *Buggs I,* at ECF No. 73. At the hearing, Buggs objected to his designation as a career offender, the absence of a mitigating-role adjustment, and the inclusion of some portions of his criminal history in the Pre-Sentence Investigative Report ("PSR"). *Id.* at 4-5. Buggs disagreed with his designation as a career offender, which was imposed on the basis of prior convictions for delivering cocaine, and fleeing from law enforcement officials, on the grounds that his prior conviction for delivering cocaine involved a small amount of controlled substances, and that his prior conviction for fleeing from law enforcement officers should not qualify as a crime of violence as he did not harm anyone in the course of fleeing. *Id.* at 8-9. The District Court overruled the objections, finding that the earlier offenses qualified as a

predicate for the designation. *Id.* at 10-11. The District Court additionally found that Buggs was not entitled to a reduction for his minor role in the conspiracy, and was not entitled to have certain prior police contacts excised from the PSR. *Buggs I,* at ECF No. 73 at 14-16.

The District Court began calculating the appropriate sentence by noting that, due to the application of the career offender enhancement, Buggs's Guidelines offense level was 37. *Id.* at 19. With reductions for Buggs's acceptance of responsibility, the final Guidelines level was 34 with a criminal history category of VI, resulting in a suggested Guidelines range of 262 to 327 months in prison with respect to Count 1. *Id.* Count 6 carried a statutory mandatory minimum of 60-months imprisonment and was required by law to run consecutive to the sentence on Count 1. *Id.* at 20.

The District Court determined that a variance from the suggested Guidelines range was warranted as the career offender Guidelines range imposed a sentence that was greater than necessary to comply with statutory sentencing factors. *Id.* at 31. In imposing the sentence, the District Court elected to consider "what would be the guideline level here in the absence of the career offender enhancement?" *Buggs I,* at ECF No. 73 at 37. Determining that, in the absence of the career offender enhancement, Buggs's Guidelines sentence range would be 130 to 162 months imprisonment, the District Court decided this represented a more appropriate range and ultimately imposed a sentence of 130 months on Count 1. *Id.* When the statutorily mandated 60 months imprisonment on Count 6 was applied, Buggs received a total sentence of 190 months in prison. *Id.* The District Court determined this downward variance was appropriate and noted "from a mandatory minimum perspective, I have to give 180 months here anyway." *Id.* On December 13, 2010, Buggs's sentence was reduced by ten months, when the sentencing court granted a

4

motion under Rule 35(b) of the Fed. R. Crim P. and lowered the sentence for Count 1 to 120 months, making Buggs's total sentence 180 months in prison. *Buggs I,* at ECF No. 53.

On December 14, 2009, following Buggs's sentencing in the District Court, a probation officer employed by the Michigan Department of Corrections ("MDOC") prepared a Parole Violations Worksheet. (ECF No. 30-7). The worksheet noted that Buggs had received a federal sentence for the conduct occurring on April 8, 2009 which formed the basis of his parole violation status, but that federal authorities "would like state violations disposed of first." (*Id.* at 2). The worksheet recommended that Buggs be returned to state authorities to commence the parole revocation process. (*Id.*).

An Individual Custody/Detention Report prepared by the United States Marshals Service indicates that, on December 23, 2009, Buggs was released into the custody of the MDOC to resolve his state parole violation. (ECF No. 30-8 at 1). While Respondent did not include documents detailing the underlying state parole revocation proceedings, the materials supplied indicate that the hearing occurred on January 21, 2010 and resulted in (1) the revocation of Buggs's parole and (2) the requirement he serve the remainder of his state term of imprisonment. (ECF No. 30-12 at 1). Buggs was readmitted into federal custody on March 16, 2010, at which point his federal sentence commenced. (ECF Nos. 30-1 at 2; 30-8 at 2; 30-12 at 1).

Buggs next filed an unsuccessful motion under 18 U.S.C. § 3582(c), asking for a sentence reduction under Amendment 750 to the Guidelines. *Buggs I,* at ECF No. 79. The sentencing court denied the motion, stating, "[Buggs] was sentenced as a career offender under U.S.S.G. § 4B1.1(a). The career offender guidelines continue to apply, and so defendant is ineligible for a reduction in sentence." *Id.* at 1. Buggs appealed the matter to the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit"), which in

September 2013 dismissed the appeal on the ground that, following the District Court's 10-month reduction of his sentence, Buggs was serving the statutorily mandated minimum sentence and, accordingly, recalculation of his Guidelines sentencing range could have no effect on his sentence. *Buggs I,* at ECF No. 89 at 4.

Buggs's next attempt for a sentence reduction was a second motion filed under 18 U.S.C. § 3582(c) in which he argued that he was entitled to a sentence modification pursuant to Amendment 782 to the Guidelines. *Id.* at ECF No. 97. This motion was denied on June 15, 2015, again on the basis that Buggs was sentenced as a career offender and was not eligible for retroactive sentencing under the Amendment. *Id.* at ECF No. 105.

On February 1, 2016, Buggs requested credit for time he spent in the custody of state authorities via the BOP's administrative remedy process. (ECF No. 30-1 at 3). On March 3, 2016, Jose Santana, Chief of the BOP's Designation and Sentence Computation Center, sent a letter to the District Court with respect to Buggs's request. (ECF No. 30-12). In the letter, Mr. Santana noted that Buggs was requesting a retroactive designation that his federal sentence be served concurrently with his state sentence, and inquired if the District Court had a position as to whether this request should be granted. (*Id.* at 2). On May 5, 2016, the District Court responded, informing Mr. Santana that as the public sentencing record revealed no opinion regarding whether the federal sentence should be served concurrently with, or consecutively to, Buggs's state sentence, the District Court doubted whether it "had any power now to affect the designation decision of the BOP." (ECF No. 30-13 at 1). The District Court stated that, to the extent it did have authority over this decision, it believed "the BOP should calculate the time of [Buggs's] federal sentence in this case, including any potential impact of the state custodial time, under the rules and policies the BOP normally applies." (*Id.*). On May 11, 2016, Andrew Roush, a

6

Correctional Programs Specialist, sent a letter to Buggs informing him that the BOP had determined to deny his request for credit toward his federal sentence for time spent in state custody, which had been construed as request for retroactive designation. (ECF No. 30-11 at 1).

Ms. Kelly asserts in her affidavit that communications with MDOC employees have revealed that Buggs "has received continuous credit towards his Michigan sentences for time spent on parole and time served upon return to custody." (ECF No. 30-1 at 3). Accordingly, Ms. Kelly explains that Buggs "is not entitled to any prior custody credit, as state authorities have indicated that at all times he was continuously serving his state sentences." (*Id.*).

On May 16, 2016, Buggs filed his first motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255 in the Western District of Michigan. *Buggs v. United States,* Case No. 1:16-cv-00527-RJJ (W.D. Mich. May 16, 2016) ("*Buggs II").* Buggs challenged his career offender designation, arguing that one of the predicate crimes—a conviction for fleeing and eluding—was improperly considered a crime of violence. *Id.* at ECF No. 1 at 4. He also claimed that he had not been given full credit for the time he spent in federal custody prior to sentencing, that he never saw a search warrant before his residence was searched, and that his sentence was too high as it was based on a now defunct 100 to 1 crack cocaine ratio. *Id.* at 5-8 Buggs relied on *Johnson v. United States*, 135 S. Ct. 2551 (2015) to establish that he no longer qualified as a career offender. *Id.* at 4.

On March 24, 2017, the District Court rejected Buggs's § 2255 motion. *Id.* at ECF No. 11. The District Court first explained that the *Johnson* decision did not apply to Buggs, because he was not sentenced as an Armed Career Criminal, which was the focus of the

*Johnson* case. *Id.* at 3. The District Court also noted that Buggs's claim was foreclosed by a decision of the Supreme Court of the United States ("Supreme Court"), *Beckles v. United States,* 137 S. Ct. 886 (2017), in which the Supreme Court held the decision in  *Johnson* did not apply to sentence calculations made under the Guidelines. *Buggs II,* at ECF No. 11 at 4.

 With respect to Buggs's claim of improper sentence calculation, the District Court found that this claim should be addressed to the BOP and was not cognizable in a § 2255 petition. *Id.* The District Court ruled that Buggs's claim there was no warrant to search his house was contradicted by the record, and that he was not entitled to be resentenced under the Fair Sentencing Act of 2010. *Id.* at 4-5.  Finally, the District Court emphasized that Buggs had not filed his motion within the statutory limitations period, making it untimely, and he waived his right to file a § 2255 motion in the plea agreement; thereby, precluding the motion. *Id.* at 5-8.

On January 14, 2019, Buggs submitted a letter to the Clerk of Court inquiring as to the effect of the, then recently passed, Fair Sentencing Act of 2018 ("FSA"). *Buggs I*, at ECF No. 124. On March 18, 2019, the District Court appointed a public defender to represent Buggs in pursuing this request. *Id.* at ECF No. 134. On July 22, 2019, the District Court issued an Order reducing Buggs's sentence pursuant to the FSA. *Id.* at ECF No. 144.

The District Court began by noting that the issue presented was whether it was authorized by the FSA to revisit Buggs's career offender status, and resentence Buggs utilizing the new mandatory minimum supplied by the FSA. *Id.* at ECF No. 143 at 1-2. The District Court first determined that Buggs was eligible for a reduced sentence under the FSA as the amount of crack cocaine involved in his offense of conviction, 78 grams, was no longer enough to trigger the statutory enhancement applied to Buggs's sentence. *Id.* at

13-14. The District Court then considered the argument proffered by Buggs, that the FSA entitled him to plenary resentencing and that he no longer qualified as a career offender. Buggs additionally argued that his criminal history score should be lowered because the current version of the Guidelines no longer considered "recency points" in assessing the appropriate criminal history score. *Buggs I*, at ECF No. 143 at 16-17. The United States argued Buggs was not entitled to recalculation of his career offender status as a procedural matter. *Id.* at 16. The District Court ultimately determined it need not address the question of recalculating Buggs's Guidelines range "because the guideline recalculation is simply one factor in the Court's consideration and not a controlling one." *Id.* at 18.

The District Court found that Buggs was entitled to a discretionary reduction in his sentence. The District Court stated, "[i]n evaluating the extent of the reduction, the Court considers the guideline analysis of each side, as well as the factors set forth in § 3553(a)." *Id.* Due to the application of the FSA, Buggs's mandatory minimum sentence on Count One, was now five years. *Id.* The District Court found that an appropriate sentence, which satisfied "the Section 3553 factors and comports with the relief authorized by the [FSA]," was 84 months on Count 1, and sixty months on Count 6, to be served consecutive to Count 1. All other aspects of the sentence remained unchanged. *Id.* at 18-19. The District Court believed this sentence reflected "the purposes of sentencing, including the seriousness of the offense, deterrence to others, protecting the public, respect for the law, and providing rehabilitative opportunities" *Id.* at 19.

On August 5, 2019, Buggs submitted a motion requesting that the District Court grant him credit for time that he had spent in custody from April 8, 2009 to March 15, 2010, which Buggs believed had not been credited against a federal or state sentence. *Buggs I,* at ECF No. 148 at 1. The District Court denied this request on August 7, 2019,

finding that it was not properly brought before that court. *Id.* at ECF No. 150.

### B. Procedural history in this Court

On November 8, 2017, a Complaint was filed against Buggs in this Court. *United States of America v. Buggs,* Case No. 1:17-cr-00207 (S.D.W. Va. Nov. 28, 2017) at ECF No. 4. The Complaint alleged that Buggs unlawfully possessed marijuana while incarcerated at Federal Correctional Institute McDowell, located in Welch, West Virginia. *Id.* at 1. On November 28, 2017 Buggs pled guilty to one Count of unlawful possession of a prohibited object in violation of 18 U.S.C. § 1791(a)(2) and was sentenced to 5 months imprisonment, to be served consecutive to the sentence imposed in the Western District of Michigan. *Id.* at ECF Nos. 10, 12.

On April 18, 2018, Buggs filed the instant petition for a writ a habeas corpus pursuant to 28 U.S.C. § 2241. (ECF Nos. 1, 4). Petitioner raises the following four claims in support of his petition: (1) his fleeing and eluding conviction was improperly counted as a predicate crime of violence in the application of the career offender guidelines at sentencing; (2) "recency points are now invalid;" (3) the sentencing court improperly counted as separate predicate offenses convictions that were consolidated; and (4) his prior custody credit was not calculated properly. (ECF No. 4 at 6-7).

After some issues related to the filing fee were resolved, the Court issued a Show Cause Order, and the United States filed a response to the Show Cause Order on March 29, 2019. (ECF Nos. 16, 24). The United States argued that Buggs's petition should be summarily addressed, because it fails to state a claim cognizable under § 2241, it is procedurally barred as untimely and as second and successive, and it substantively lacks merit. (ECF No. 24 at 8). Buggs responded on April 26, 2019 to Respondent's assertions, arguing that relief was appropriate because his "sentence would be substantially lower if

I was sentenced today and is a miscarriage of justice." (ECF No. 26 at 1). Buggs contends that, due to various changes in how the Guidelines are calculated, his Guidelines sentencing range would be lower if calculated today. (*Id.* at 1-2). Buggs also asserts that the prior convictions used to label him as a career offender under the Guidelines would no longer qualify as valid predicate offenses and cites a number of cases in support of this contention. (*Id.* at 2).

On August 27, 2019, the undersigned ordered Respondent to respond to Buggs's argument that he had improperly been denied prior custody credit. (ECF No. 27). Buggs was given an opportunity to reply to any response issued by Respondent. (*Id.*). Respondent filed a response on October 28, 2019, positing that Buggs's sentence was properly calculated. (ECF No. 30). According to Respondent, Buggs did not qualify for additional custody credit, because he was serving a state sentence at the time he was detained on the underlying federal charges and the time he spent in federal custody was credited against his state sentence. (*Id.* at 7-8). Respondent attached a number of documents in support of this argument. Buggs did not file a response to Respondent's contention that Buggs's prior custody credit was accurately calculated.

## II.    **Standard of Review**

Respondent requests that Buggs's petition be dismissed. (ECF Nos. 24 at 9; 30 at 10). Respondent does not articulate under which rule's authority he seeks dismissal, but, presumably, this request made pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Respondent filed a Response concurrently with his motion to dismiss, the motion technically should be considered as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). However, the distinction makes no practical difference as the same standard of review applies to

motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c), and both motions may be filed in habeas actions. *Id*. at 138-39; *see also Martin v. U.S. Parole Comm'n*, No. CV PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion without converting it into a motion for summary judgment. *Id*. The Court "may also consider documents attached to the complaint ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp*., 572 F.3d 176, 180 (4th Cir. 2009).

## III.   <u>Discussion</u>

Buggs raises several challenges to the calculation of his Guidelines range. Specifically, he alleges that his prior conviction for fleeing from police officers no longer qualifies as a predicate offense for the purposes of the career offender enhancement. (ECF

No. 4 at 6). Buggs also asserts that his sentence should be reduced as the "recency points" used to calculate his Guidelines range are now invalid. (*Id.*). Buggs contends that the District Court improperly considered as separate prior convictions charges which were consolidated. (*Id.*). The undersigned will first consider Buggs's challenges to his Guidelines calculation and then turn to his argument that he was improperly denied credit for prior custody time.

### A. Challenges to Guidelines application

With respect to these claims, Buggs is clearly challenging the legality of his sentence, rather than the execution of his sentence. Accordingly, Buggs's action is properly brought under 28 U.S.C. § 2255, which is the exclusive remedy for challenging the validity of a federal judgment and sentence. *See In re Vial*, 115 F.3d 1192, 1194 (4th Cir. 1997). Although § 2241 provides a general grant of habeas corpus authority, the remedy under § 2241 is not an additional, alternative, or supplemental remedy to that prescribed under § 2255.

However, § 2255(e) provides a "savings clause" exception which serves as a means for petitioners to apply for a traditional writ of habeas corpus pursuant to § 2241. It states:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.*

28 U.S.C. § 2255(e) (emphasis added). The savings clause will occasionally allow a § 2241 petition to take the place of a § 2255 motion, but not "merely ... because an individual is procedurally barred from filing a Section 2255 motion," *Vial*, 115 F.3d at 1194 n.5, nor simply because relief is unavailable due to the gatekeeping provisions of § 2255. *Young v.*

*Conley*, 128 F.Supp.2d 354, 357 (S.D.W. Va. 2001). Instead, to trigger the savings clause in the context of a challenge to the validity of a conviction, the petitioner's claim must contain all three of the following characteristics: (1) at the time of his conviction, the settled law of the circuit or the Supreme Court established the legality of his conviction; (2) subsequent to his direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which he was convicted is now deemed not to be criminal; and (3) he cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law. *In re Jones*, 226 F.3d at 328, 333-34 (4th Cir. 2000). With respect to challenges involving the validity of a sentence, the savings clause is available only when the petitioner can establish that: (1) at the time of sentencing, settled law of the circuit or the Supreme Court established the legality of the sentence; (2) subsequent to his direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) he cannot satisfy the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect. *United States v. Wheeler*, 886 F.3d 415, 429 (4th Cir. 2018). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") held in *Wheeler* that the savings clause requirements are jurisdictional rather than procedural; therefore, if they are not met, the court does not have jurisdiction to entertain the § 2241 petition. *Id.* at 426. The petitioner bears the burden of establishing that a § 2255 motion is inadequate or ineffective and that he satisfies the savings clause requirements. *See Hood v. United States*, 13 Fed.Appx. 72, 2001 WL 648636, at *1 (4th Cir. 2001); *McGhee v. Hanberry*, 604 F.2d 9, 10 (5th Cir. 1979); *Hayes v. Ziegler*, No. 5:11-cv-00261, 2014 WL 670850 (S.D.W. Va. Feb. 20, 2014), *aff'd*, 573 Fed.Appx. 268 (4th Cir. 2014).

### 1. Governing law

Buggs was convicted in the Western District of Michigan which sits within the Sixth Circuit. He filed the instant § 2241 petition in this Court while he was incarcerated within the Southern District of West Virginia. "[T]he substantive law relevant to a § 2241 petition is that of the circuit in which the petitioner was convicted." *Chaney v. O'Brien*, No. CIV.A. 7:07CV00121, 2007 WL 1189641, at *3 (W.D. Va. Apr. 23, 2007), *aff'd,* 241 Fed. Appx. 977 (4th Cir. 2007). "Application of the law of the place of conviction is a consistent, reasonable rule, as is evidenced by the requirement that § 2255 motions be filed in the district of conviction." *Hernandez v. Gilkey*, 242 F. Supp. 2d 549, 554 (S.D. Ill. 2001). Moreover, applying the law of the court of confinement would result in the choice of law being based "on the fortuitous placement of a prisoner by the Bureau of Prisons, not the more rational factor of the place of conviction." *Chaney,* No. CIV.A. 7:07CV00121, 2007 WL 1189641, at *3 (internal quotation omitted). This could result in inequitable outcomes such as co-defendants convicted of the exact same crimes receiving different relief based on the location of their confinement. *Id.* For these reasons, when analyzing a federal inmate's § 2241 petition, courts in this circuit apply the substantive law of the court of conviction when it differs from the substantive law of the reviewing court's circuit. *See Hahn v. Moseley,* 931 F.3d 295, 300 (4th Cir. 2019) ("In evaluating substantive claims under the savings clause ... we look to the substantive law of the circuit where a defendant was convicted.").

While the law of the court of conviction governs a prisoner's substantive § 2241 claims, Fourth Circuit procedural law continues to control the disposition of the petition. *Id.* Accordingly, the undersigned will consider Buggs's § 2241 petition under the substantive law of the Sixth Circuit, while applying the procedural law of the Fourth

Circuit.

### 2. Buggs is not entitled to use the savings clause

*i.) Ability to challenge Guidelines error in habeas review*

As an initial matter, Respondent argues that Buggs may not attack his sentence on these grounds because he is challenging the application of his advisory Guidelines range, and the Fourth Circuit has previously held that challenges of this nature are not susceptible to review under the savings clause. (ECF No. 24 at 6).

Respondent is correct that the Fourth Circuit held in *United States v. Foote*, 784 F.3d 931, 941 (4th Cir. 2015) that the advisory nature of the Guidelines means that an error in their application does not result in a "fundamental defect or a complete miscarriage of justice" as required to utilize the savings clause. The Fourth Circuit later affirmed that the advisory nature of the Guidelines renders an error in their calculation to be a non-fundamental defect. *See Lester v. Flournoy,* 909 F.3d 708, 715 (4th Cir. 2018) (error in guidelines calculation was fundamental error where petitioner sentenced under pre-*Booker* mandatory guidelines, but "*Foote* undoubtedly would bar [the petitioner's] petition had he been sentenced under the advisory Guidelines."); *see also Gomez v. Young*, No. 5:17-CV-01383, 2019 WL 896263, at *3 (S.D.W. Va. Feb. 22, 2019), *aff'd*, 771 F. App'x 320 (4th Cir. 2019) ("The Fourth Circuit later held that 'a misapplied career offender enhancement' under the advisory Guidelines would likewise not be a fundamental defect for purposes of the savings clause in § 2241 petitions.") (quoting *Lester*, 909 F.3d at 715); *Kornegay v. Warden, FCI Butner,* 748 Fed. Appx. 513, 514 (4th Cir. 2019) (denying § 2241 petition because "[the petitioner] was sentenced under the advisory Guidelines and *Foote* bars his petition.") (unpublished). The Sixth Circuit has also held that a claim of error under the advisory Guidelines sentencing regime does not

represent a "fundamental miscarriage of justice" and thus is not cognizable in a habeas petition. *See Bullard v. United States*, 937 F.3d 654, 659-60 (6th Cir. 2019) ("Rather, [the petitioner] alleges that his career-offender designation is erroneous under the advisory Sentencing Guidelines. This is fatal to his claim.").

Buggs in his petition raises claims of errors made in the calculation of his Guidelines sentencing range. (ECF Nos. 4 at 6; 26 at 1-2). Assuming *arguendo* that Buggs is correct, and that changes in law have made his Guidelines range retroactively erroneous, his claim simply is not cognizable in a § 2241 petition. Accordingly, the undersigned **FINDS** that Buggs's claims of Guidelines error should be dismissed.

### ii.) The District Court departed from the Guidelines range

Even if Buggs's claims were not barred by his inability to raise them in a § 2241 petition, they would not entitle him to relief as the District Court explicitly departed from the recommended Guidelines range in fashioning Buggs's sentence. The Fourth Circuit has recently held that "[i]t is well established that we will not vacate a sentence if we determine that the district court's improper calculation of the Guidelines advisory sentencing range was harmless." *United States v. Mills*, 917 F.3d 324, 330 (4th Cir. 2019). As the Fourth Circuit explained, "'[t]here may be instances when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist. ... The record in a case may show, for example, that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range.'" *Id.* (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016)). "Put a little differently, it would make no sense to set aside [a] reasonable sentence and send the case back to the district court since it has already told us that it would impose exactly the same sentence, a sentence we would be compelled to affirm." *United States v. Savillon-Matute*, 636 F.3d

119, 123 (4th Cir. 2011) (quotation omitted). A determination that a district court believed the sentence it imposed to be reasonable regardless of the suggested Guidelines range may be based on the district court's explicit statement to that affect or, based on reliable indications made by the district court that it considered the sentence imposed to be fair and appropriate. *Id.* at 124; *see also United States v. Morrison*, 852 F.3d 488, 491 (6th Cir. 2017).

In Buggs's case, the District Court explicitly departed from the recommended Guidelines range  in imposing the sentence and determined that a downward variance was warranted. *Buggs I,* at ECF No. 73 at 31. In calculating an appropriate sentence, the District Court considered the statutory factors at length. *Id.* at 37. The District Court ultimately determined that a sentence of 130 months on Count 1 and 60 months on Count 6 was an appropriate sentence and more accurately reflected Buggs's level of culpability. *Id.*

The District Court again considered what an appropriate sentence for Buggs would be in its July 2019 response to requests for reductions made under the FSA. *Id.* at ECF No. 143. In determining the appropriate sentence, the District Court noted that it was "inclined to believe that the defense is likely correct that applying the current version of the guidelines would result in a conclusion that the career offender enhancement no longer applies to … Buggs." *Id.* at 17. However, the District Court ultimately declined to explicitly address this question, as well as the issue of whether Buggs's criminal history category should be reconsidered, as "[u]ltimately, … the guideline recalculation is simply one factor in the Court's consideration and not a controlling one." *Buggs I,* at ECF No. 143 at 18. "In evaluating the extent of the reduction," the District Court considered "the guideline analysis of each side, as well as the factors set forth in § 3553(a)." *Id.* The District

Court explicitly noted that:

> Buggs's postsentencing conduct has demonstrated a strong desire to address the root cause of his offense behavior here and in his criminal history more generally. While he has incurred some disciplinary infractions, he has also completed programs focused on drug abuse. He has, furthermore, completed programs of academic study. Defendant has been in custody for a lengthy period of time already and will still have five years of supervision to see whether he can apply the lessons he has learned in a community setting.

*Id.* The District Court ultimately reduced Buggs's sentence to "a total custodial term of 144 months, consisting of 84 months on Count 1 and 60 months on Count 6, consecutive to Count 1." *Id.* The District Court stated its belief that the sentence "satisfies the Section 3553 factors and comports with the relief authorized by the First Step Act," that it "reflects the purposes of sentencing, including the seriousness of the offense, deterrence to others, protecting the public, respect for the law, and providing rehabilitative opportunities," and that it was "the best balance of the Section 3553 factors." *Id.* at 19.

Under these circumstances, even assuming that there was an error in Buggs's Guidelines calculation, he is not entitled to relief as it is clear the sentence imposed by the District Court was not driven by any error made in the Guidelines calculation. The District Court explicitly noted that Buggs's prior Guidelines sentencing range may be erroneous under the current Guidelines regime, but declined to recalculate the appropriate Guidelines range as it was "simply one factor" in the ultimate decision. The District Court then went on to fashion a new sentence it found appropriate under the statutory factors and purposes of sentencing. *Buggs I,* at ECF No. 143 at 17-19. Accordingly, given the District Court's recent resentencing opinion, any error in Buggs's assigned Guidelines range was harmless and he would not receive a lower sentence if granted his request for resentencing. Accordingly, the undersigned **FINDS** that Buggs's claims for relief on these

grounds should be dismissed.

### B. Transfer or dismissal of Guidelines claims

As Buggs is unable to proceed under § 2241 in this Court, his petition "must either be dismissed or construed as a section 2255 motion." *Pack v. Yusuff*, 218 F.3d 448, 452 (5th Cir. 2000). If this Court chooses to dismiss Buggs's action, then he will be required to pursue his claim in the United States District Court for the Western District of Michigan. Unlike § 2241 petitions, which are brought in the district where the petitioner is incarcerated at the time that he files his petition*, see United States v. Poole,* 531 F.3d 263, 264 (4th Cir. 2008), § 2255 directs the movant to "move the court which imposed the sentence" to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a).

The Court could construe Buggs's petition as a § 2255 motion and transfer it to the sentencing court; however, the undersigned **FINDS** no purpose in this exercise. Buggs's apparent lack of authorization from the Sixth Circuit to file a successive § 2255 motion, as required by § 2255(h) and 28 U.S.C. § 2244(b)(3)(A), eliminates any benefit to be gained from a transfer to the sentencing court. *See Harris v. Hogsten*, No. 1:13-11595, 2013 WL 6008496, at *2 (S.D.W. Va. Nov. 13, 2013); *Satcher v. Hogsten*, No. 1:13-0466, 2013 WL 5674856, at *2 (S.D.W. Va. Oct. 17, 2013); *see also United States v. Winestock*, 340 F.3d 200, 205 (4th Cir. 2003) ("In the absence of pre-filing authorization, the district court lacks jurisdiction to consider an application containing abusive or repetitive claims.").

As an alternative, this Court may exercise its authority under 28 U.S.C. § 1631, recharacterize the petition as a motion for pre-filing authorization, and transfer it to the Sixth Circuit for consideration. Title 28 U.S.C. § 1631 provides as follows:

> Whenever a civil action is filed in a court … and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action … to any other such court in which the action … could have been brought at the time it was filed … and the action … shall proceed as if it had been filed in … the court to which it is transferred on the date upon which it was actually filed in … the court from which it is transferred.

Notably, the Fourth Circuit has declined to impose "a blanket policy of mandatory transfer of unauthorized successive petitions to th[e] court for consideration as [pre-filing authorization] motions;" instead, leaving district courts the discretion to determine whether the transfer of an unauthorized successive petition is "in the interest of justice." *Jones v. Braxton*, 392 F.3d 683, 691 (4th Cir. 2004). A district court may dismiss, rather than transfer, a petition that is meritless or time-barred. *United States v. McNeill*, 523 Fed. Appx. 979, 984 (4th Cir. 2013) (citing *Phillips v. Seiter*, 173 F.3d 609, 610–11 (7th Cir. 1999)) (stating that the transfer of a frivolous, time-barred case is a waste of judicial resources) and *Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1001 (Fed. Cir. 1987) (declining to transfer claims under § 1631 that were frivolous).

For an appellate court to grant a request to file a second or successive § 2255 motion, the motion must contain:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h); *see also Winestock,* 340 F.3d at 205. In considering whether a pre-filing authorization motion should be granted, the Fourth Circuit considers "whether the applicant made the requisite prima facie showing about a new rule of constitutional law," and whether the successive motion would be time-barred. *In re Vassell*, 751 F.3d 267,

270-71 (4th Cir. 2014). In contrast, the Sixth Circuit—the court to which this case would be transferred—does have a blanket policy requiring its district courts to transfer all successive § 2255 motions, so that the Sixth Circuit may decide the issue of preauthorization. *United States v. Gastelum-Lara*, 478 Fed.Appx. 303, 305 (6th Cir. 2012); *In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997); *Berry v. United States*, No. 05-cr-20048, 2014 WL 6668488, at *2 (E.D. Mich. Nov. 24, 2014). However, as noted above, while the substantive law of the Sixth Circuit applies to the merits of Buggs's claims, this Court continues to be governed by Fourth Circuit procedural law. Accordingly, "tak[ing] a peek at the merits" of Buggs's claim, it appears that a transfer is not warranted because Buggs does not satisfy the requirements of 28 U.S.C. § 2255(h). *Phillips*, 173 F.3d at 610.

As an initial matter, these claims would not be cognizable in the Sixth Circuit because, like the Fourth Circuit, that court has held that a claim of Guidelines error is not cognizable in a petition for habeas relief. *See Bullard*, 937 F.3d at 659-60. (holding that the petitioner's claim of a misapplied career offender designation could not be raised in a § 2255 petition). Accordingly, the undersigned **FINDS** that transferring Buggs's claims of Guidelines error to the Sixth Circuit would be a waste of judicial resources.

Buggs additionally has not identified any retroactively applicable Supreme Court case or newly discovered facts which would entitle him to file a second or successive petition under § 2255(h). Buggs asserts that he is bringing this petition due to the "substantial change in law under *Wheeler* and *Dimaya*." (ECF No. 4 at 4). *Wheeler* is a decision from the Fourth Circuit that outlined when a petitioner may utilize the savings clause and would not entitle Buggs to relief in the Sixth Circuit on any of his claims. Buggs's citation to "*Dimaya*" is likely a reference to the Supreme Court decision, *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). In that decision, the Supreme Court held that the

definition of " a crime of violence" as contained in the Immigration and Nationality Act was unconstitutionally vague. *Dimaya*, 138 S. Ct. at 1210. However, the Sixth Circuit has previously held that, following the Supreme Court decision in *Beckles v. United States,* 137 S. Ct. 886 (2017), a sentence imposed under the advisory Guidelines is not subject to attack via the void-for-vagueness doctrine. *See Chambers v. United States*, 763 F. App'x 514 (6th Cir. 2019); *United States v. Fizer*, No. CR 14-20652, 2019 WL 6329816, at *3 (E.D. Mich. Nov. 26, 2019) (*Beckles* foreclosed the petitioner's argument that, in light of *Dimaya*, he was erroneously sentenced as a career offender under the Guidelines); *United States v. Hamilton*, No. 15 CR 390, 2019 WL 764801, at *2 (N.D. Ohio Feb. 21, 2019) (same). Accordingly, this claim would not entitle Buggs to relief in the Sixth Circuit even assuming he were permitted to challenge Guidelines designations in a successive § 2255 petition.

Finally, while not raised in his petition, Buggs cites to a number of cases he believes entitle him to relief in his Reply to Respondent's request for dismissal. Specifically, *United States v. Pawlak*, 822 F.3d 902 (6th Cir. 2016), *Shuti v. Lynch*, 828 F.3d 440 (6th Cir. 2016), and *United States v. Fluker*, 891 F.3d 541 (4th Cir. 2018). (ECF No. 26 at 2). These decisions would be unavailing for Buggs however, because, as the Sixth Circuit has recently noted, in order to file a second or successive § 2255 petition under § 2255(h), petitioners must rely on new constitutional law as created by the Supreme Court, not by the circuit courts. *Hueso v. Barnhart*, No. 18-6299, 2020 WL 104612, at *1 (6th Cir. Jan. 9, 2020). Accordingly, as Buggs would be barred from proceeding via a successive § 2255 motion because his claims of Guidelines errors are both not cognizable in a § 2255 petition, and not based on any new and retroactively applicable rules of constitutional law as decided by the Supreme Court, the undersigned **FINDS** that transfer of these claims

23

would be futile and they should be dismissed.

### C. Claim of improper calculation in prior custody credits

As Buggs's claims related to errors in his Guidelines calculation are not properly brought in a § 2241 petition, the only remaining viable claim is Buggs's assertion that he was improperly denied credit for time spent in custody prior to the commencement of his federal sentence. (ECF No. 4 at 7). This claim is properly raised in a § 2241 petition. *See e.g. Pollard v. Ziegler,* No. 5:13-CV-15863, 2015 WL 7779495, at *2 (S.D.W. Va. Dec. 2, 2015). Buggs contends that he has "been in federal custody since 4-8-09 and have a concurrent sentence running along side [sic] my federal sentence." (ECF No. 4 at 7). Buggs believes that this prior custody credit was "not calculated properly" and that he is "missing prior custody credit." (*Id.*). Respondent, by contrast, asserts that Buggs's federal sentence commenced on March 16, 2010, and as all the time he spent in custody prior to that date was credited toward a state sentence, Buggs is not entitled to prior custody credit. (ECF No. 30 at 8). Respondent attached an affidavit and a number of documents in support of his contention. Buggs has not responded to Respondent's submission, and does not dispute the authenticity of the affidavit or the supporting documents.

A defendant convicted of a federal crime has a right under 18 U.S.C. § 3585(b) to receive credit for certain time spent in official detention before his sentence begins. Specifically, § 3585(b) provides that:

> (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

*that has not been credited against another sentence.*

18 U.S.C.A. § 3585(b) (emphasis added). According to the Supreme Court of the United States, through this directive, "Congress made clear that a defendant could not receive a double credit for his detention time." *United States v. Wilson*, 503 U.S. 329, 337 (1992). The authority to compute federal terms of imprisonment and to provide credit for time served is delegated to the Attorney General, as exercised through the BOP. *See id.* at 334–35. A district court "may correct an error by the BOP through a writ of habeas corpus where that error is fundamental and carries a serious potential for a miscarriage of justice." *Rashid v. Quintana*, 372 Fed.Appx. 260, 262 (3rd Cir. 2010). In addressing any sentencing computation issue, a district court must consider: "(1) when the sentence commenced and (2) the extent to which the defendant may be entitled to credit for time spent in custody prior to commencement of the sentence." *Monroig v. Craig*, No. CIV.A. 5:08-CV-00058, 2010 WL 890974, at *3 (S.D.W. Va. Mar. 10, 2010) (citing *Chambers v. Holland*, 920 F.Supp. 618, 621 (M.D. Pa. 1996), *aff'd*, 100 F.3d 946 (3d Cir. 1996)).

A sentence for a term of imprisonment "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). This provision does not include time spent in custody prior to sentencing, because a federal sentence may not commence earlier than the date of imposition. *See Allison v. Cruz*, No. CV 0:15-221-CMC-PJG, 2015 WL 9872260, at *4 (D.S.C. Dec. 2, 2015), *report and recommendation adopted*, No. 0:15-221-CMC-PJG, 2016 WL 234998 (D.S.C. Jan. 19, 2016) (citing *Coloma v. Holder*, 445 F.3d 1282, 1284 (11th Cir. 2006)) ("[A] federal sentence cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served.").

When a federal court sentences a defendant who is in state custody and is borrowed by federal authorities to dispose of federal charges pursuant to a writ *ad prosequendum*, the inmate's federal sentence generally does not commence until the inmate fully discharges the state sentence and is transferred to federal custody. *Thomas v. Whalen*, 962 F.2d 358, 361 n.3 (4th Cir.1992). Buggs was arrested on April 8, 2009 by state authorities. (ECF No. 30-7 at 1). The State of Michigan thus obtained primary jurisdiction over Buggs.

"The concept of primary jurisdiction refers to 'the priority of service regarding a defendant's contemporaneous obligations to multiple sovereigns, whereby a defendant will fulfill his obligations to the sovereign with primary jurisdiction over him before any others.'" *Carter v. Flets*, No. 5:05-CV-00708, 2008 WL 3457032, at *6 (S.D.W. Va. Aug. 11, 2008) (quoting *Trowell v. Beeler*, 135 F. App'x 590, 594 n.2 (4th Cir. 2005)). "When a defendant has both state and federal charges, the sovereign that first arrests the defendant is the sovereign that obtains primary jurisdiction over him or her, and that sovereign retains primary jurisdiction until it is relinquished." *Ivy v. Stewart*, No. CV PX-17-816, 2017 WL 6388743, at *5 (D. Md. Dec. 14, 2017) (citing *Whalen*, 962 F.2d at 361). When a prisoner is in state custody, primary jurisdiction is not relinquished merely because a defendant is taken by federal authorities on a writ of detainer. *Carter,* No. 5:05-CV-00708, 2008 WL 3457032, at *6. "The federal writ of *habeas corpus ad prosequendum* merely loans the prisoner to federal authorities .... Principles of comity require that when the writ of *habeas corpus ad prosequendum* is satisfied, the receiving sovereign return the prisoner to the sending sovereign." *Evans*, 159 F.3d at 912. "The time the defendant appears for prosecution of federal charges pursuant to an *ad prosequendum* writ is credited, therefore, against the defendant's State sentence, not his federal sentence."

*Carter,* No. 5:05-CV-00708, 2008 WL 3457032, at *6.

Accordingly, while Buggs was taken into federal custody in order to dispose of his federal indictment, the State of Michigan retained primary jurisdiction over him. Buggs's federal sentence did not commence, therefore, until he completed his parole violation sentence and was released from state custody into the custody of the United States on March 16, 2010. The affidavit from Ms. Kelly, and documents supplied by Respondent in support, demonstrate that the time Buggs spent in state custody prior to the commencement of his federal sentence was credited against his state sentence. (ECF Nos. 30-1 at 3; 30-8 at 2; 30-16 at 1; 31-1 at 25, 97). Buggs provided no evidence in support of his conclusory statement that the time he spent in state custody was improperly calculated, and did not respond to or dispute Respondent's assertion to the contrary. Accordingly, his claim that he was denied credit for the time spent in state custody is without merit. *See Ivy v. Joyner*, No. CV 9:18-2158-HMH-BM, 2019 WL 540509, at *2 (D.S.C. Jan. 15, 2019), r*eport and recommendation adopted*, No. CV 9:18-2158-HMH-BM, 2019 WL 534225 (D.S.C. Feb. 11, 2019), *aff'd*, 770 F. App'x 52 (4th Cir. 2019) (citing *Smith v. North Carolina*, 528 F.2d 807, 809 (4th Cir. 1975)). Because the State of Michigan retained primary jurisdiction over Buggs during the pendency of his federal conviction and sentencing, and because that time was credited against his state sentence, Buggs is not entitled to have that time credited against his federal sentence. *See Pilarte-Harrigan v. Owens*, No. C.A. 3:10-885-HMH, 2011 WL 251469, at *6 (D.S.C. Jan. 26, 2011), *aff'd*, 434 F. App'x 171 (4th Cir. 2011) ("Because [the petitioner's] detainment prior to the date on which his sentence commenced was credited toward his commonwealth sentence, the BOP properly denied [the petitioner] prior custody credit for that time."); *see also Smith v. Holland*, No. 5:17-HC-2032-FL, 2018 WL 4286182, at *2 (E.D.N.C. Sept.

7, 2018) (the petitioner was not entitled to prior custody credit for time spent in federal detention when state retained primary jurisdiction over the petitioner and time was credited against state sentence); *Morris v. Masters*, No. 1:14-CV-26283, 2017 WL 2540595, at *4 (S.D.W. Va. May 17, 2017), *report and recommendation adopted*, No. CV 1:14-26283, 2017 WL 2531578 (S.D.W. Va. June 9, 2017) (same). The undersigned accordingly **FINDS** that this claim should be dismissed.

In summation, the undersigned has considered all of Buggs's claims and determined that, as to his claims attacking the validity of his sentence, these claims are not cognizable in a § 2241 petition and are subject to dismissal, and that with respect to his claim of improper calculation of his sentence, this claim lacks merit. Accordingly, the undersigned **FINDS** that this petition should be dismissed.

## IV.    **Proposal and Recommendations**

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, (ECF No. 4), be **DENIED;** that Respondent's requests for dismissal, (ECF Nos. 24, 30), be **GRANTED;** and that this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the

Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Faber, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Petitioner and counsel of record.

**FILED:** January 31, 2020

Cheryl A. Eifert
United States Magistrate Judge